FILED
3/23/2020
Clerk, U.S. District Court
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TAMMY WILHITE,<br><br>               Plaintiff,<br><br>vs.<br><br>PAUL LITTLELIGHT, LANA THREE IRONS, HENRY PRETTY ON TOP, SHANNON BRADLEY, and CARLA CATOLSTER,<br><br>               Defendants. | CV 19-20-BLG-TJC<br><br>**ORDER** |

Plaintiff Tammy Wilhite ("Wilhite") brings this action against Defendants Paul Littlelight, Lana Three Irons, Henry Pretty on Top, Shannon Bradley and Carla Catolster ("Defendants") alleging a civil RICO claim following her termination from the Awe Kualawaache Care Center ("Care Center") where she worked as a registered nurse. (Doc. 1.)

Presently before the Court are Defendants' Motion to Dismiss Re: Federal Tort Claims Act Exclusivity (Doc. 4), Defendants' Motion to Dismiss Re: Res Judicata (Doc. 12), and Wilhite's Motion to Strike (Doc. 14). The motions are fully briefed and ripe for the Court's review.

1

Having considered the parties' submissions, the Court finds Defendants' Motion to Dismiss Re: Federal Tort Claims Act Exclusivity should be **DENIED**, Defendants' Motion to Dismiss Re: Res Judicata should be **DENIED**, and Wilhite's Motion to Strike should be **DENIED**.

## I. BACKGROUND[1]

Wilhite was employed as a registered nurse at the Care Center in Crow Agency, Montana. The Care Center is an entity owned by the Crow Tribe of Indians. It is a long-term nursing facility that provides 24-hour medical services exclusively to members of the Crow and Northern Cheyenne Tribes. The Care Center operates under what is known as a 638 contract, which is a contract between the Tribe and the federal government that provides for tribal administration of programs previously operated by the Bureau of Indian Affairs.

While working at the Care Center, a patient told Wilhite that he had been

---

[1] For the purposes of this motion, the Court accepts as true the allegations contained in Wilhite's Complaint. *Wyler Summit P'ship v. Turner Broadcasting Sys, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The Court also takes judicial notice of court documents from this Court in *Wilhite v. Awe Kualawaache Care Ctr, et al.*, Case No. 18-cv-80-SPW (D. Mont. May 9, 2018). The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is generally confined to the pleadings. *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). However, the court may take judicial notice of matters of public record, including documents on file in state and federal courts without converting a motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir.2012).

2

molested while being transported. Wilhite reported the incident to Defendant Catolster, who was her immediate supervisor. The person who allegedly molested the patient was related to Catolster.

When it appeared that no action was being taken, Wilhite reported the incident to law enforcement. The Montana Department of Public Health and Human Services conducted an investigation in March 2018, and the Centers for Medicare and Medicaid Services made a report substantiating the allegations of patient abuse. The report was made available to Catolster on March 21, 2018.

As a benefit of her employment, Whilhite was provided housing in an apartment. After being told of the results of the investigation, however, Catolster informed Wilhite's landlord that she was no longer employed by the Care Center and directed the landlord to lock Wilhite out of her apartment. The landlord did as directed, but allowed Wilhite to retrieve her personal belongings and her car. At the time, Wilhite was not informed that her employment had been terminated.

Wilhite continued to work at the Care Center until she was summoned to a board meeting on March 29, 2018. She was told the reason for the meeting was to hear her grievance about being locked out of her apartment. The board members present at the meeting were Defendants Littlelight, Pretty on Top, Three Irons, and Bradley. Wilhite alleges the Defendants conspired to terminate her employment when she appeared for the meeting.

3

Wilhite was, in fact, terminated at the meeting. The stated reason was that she had a gun in her car. Wilhite alleges Defendants did not find a gun in her car; but even if she had a gun in her car, there was no policy forbidding employees from having weapons in their vehicles. Wilhite asserts the real reason she was terminated was because she reported patient abuse to law enforcement.

On May 9, 2018, Wilhite brought suit in this district, alleging she was entitled to damages under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"). *Wilhite v. Awe Kualawaache Care Ctr, et al.*, Case No. 18-cv-80-SPW (D. Mont. May 9, 2018) ("*Wilhite I*"). Wilhite named the Care Center and its board members, Littlelight, Three Irons, Pretty On Top, Bradley, and administrator, Catolster as defendants. (*Id.*) Judge Watters dismissed the case, finding Wilhite's claim was barred by tribal sovereign immunity. *Wilhite I*, Docket No. 39 (D. Mont. Oct. 22, 2018); Docket No. 45 (D. Mont. Dec. 20, 2018). Judge Watters found Wilhite could not recover from the Care Center for the official acts of its board of directors. (*Wilhite I*, Docket No. 45 at 3.) She indicated, however, that "Wilhite is free to properly file a new claim against the board of directors personally and/or potential claims against the United States under the Federal Tort Claims Act." (*Id.* at 5.)

Thereafter, on February 22, 2019, Wilhite filed this lawsuit, re-alleging her civil RICO claim against only the board of directors in their individual capacities.

(Doc. 1).  Defendants have filed two motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  In the first motion, Defendants argue Wilhite fails to state a claim upon which relief can be granted because her claim is barred by the Federal Tort Claims Act, 28 U.S.C. § 2679 ("FTCA").  In the second motion, Defendants assert Wilhite's claim is precluded by the doctrine of res judicata.

## II. ANALYSIS

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  A plausibility determination is context specific, and courts must draw on judicial

experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *Wyler Summit P'ship*, 135 F.3d at 661.

### A. Motion to Dismiss Based on Federal Tort Claims Act Exclusivity

Defendants argue Wilhite's claim is precluded as a matter of law due to the exclusive remedy provisions of the FTCA. Defendants assert Wilhite's claim relates to actions Defendants took within the course and scope of their employment under the 638 contract, and they are thus deemed to be federal employees for purposes of the FTCA. Defendants therefore argue Wilhite's claim can only be brought against the United States under the FTCA.

Wilhite counters that federal employment does not shield Defendants from individual liability if they act outside the scope of their employment or if there is a separate statute that authorizes liability. Wilhite asserts RICO authorizes an action against individuals independent of the FTCA. Alternatively, Wilhite argues that even if Defendants are covered by the FTCA, a motion to dismiss is not the proper method to raise FTCA exclusivity. Wilhite argues Defendants must first seek certification from the Attorney General that the defendant was acting with the

6

scope of their employment with the United States, pursuant to the Westfall Act, 28 U.S.C. § 2679(d).

The United States has waived its sovereign immunity under the FTCA for injuries or loss "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. §§ 1346(b), 2672. The Westfall Act amended the FTCA, and provides that "[t]he remedy against the United States provided by sections 1346(b) and 2672 of this title . . . is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . . ." 28 U.S.C. 2679(b)(1). In short, "[t]he FTCA immunizes federal employees from individual liability for an 'action [that] is properly against the United States under the FTCA.'" *Beebe v. United States*, 721 F.3d 1079, 1084 (9th Cir. 2013) (quoting *Meridian Int'l Logistics, Inc. v. United States*, 929 F.2d 740, 743 n. 1 (9th Cir. 1991)).

The Westfall Act also outlines the procedure for invoking the immunity provided by the FTCA, and for substituting the United States as the proper party in the action. When a federal employee is sued for a wrongful or negligent act, the employee must deliver copies of the summons and complaint to a supervisor to be forwarded to the local United States Attorney, the Attorney General, and to the

7

head of his employing federal agency. 28 U.S.C. § 2679(c); 28 C.F.R. § 50.15(a). The Attorney General then certifies whether the employee was acting within the scope of his or her employment at the time of the event giving rise to the claim. *Id.* Upon certification, the United States is substituted as a party and the employee dismissed from the action, as provided in 28 U.S.C. § 2679(d)(1).

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

"The case then falls under the governance of the [FTCA]." *Gutierrez de Martinez v. Lamango*, 515 U.S. 417, 420 (1995). In the event the Attorney General denies certification, the employee may petition the court for certification. 28 U.S.C. § 2679(d)(3).

Here, Defendants attempt to invoke the FTCA as a defense without first seeking certification from the Attorney General, as required by the Westfall Act. There is no evidence before the Court that the Attorney General has certified that any of the Defendants were acting within the scope of their employment under the 638 contract at the time of the incidents out of which this suit arose. Nevertheless, Defendants argue Judge Watters already decided that they were acting within the course and scope of their employment in *Wilhite I*. Thus, Defendants assert issue

8

preclusion requires a finding that they were acting in the course and scope of their employment, and are therefore immune from individual liability under the FTCA.

The Westfall Act, however, explicitly grants the Attorney General the initial right to determine certification. *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993) ("Though the certification issued by the Attorney General is subject to *de novo* review, [the Westfall Act] grants the Attorney General the right to decide the scope of employment issue in the first instance."); *Jackson v. Tate*, 648 F.3d 729, 732 (9th Cir. 2011). As such, Defendants must seek certification from the Attorney General. This is the proper procedure, even when the named defendant is a tribal member operating under a 638 contract. *See e.g. Wilson v. Horton's Towing*, 906 F.3d 773, 780-83 (9th Cir. 2018) (Attorney General certified that tribal police officer was acting within the course and scope of his employment under the Westfall Act).

Moreover, the scope of employment issue before the Court in *Wilhite I* was not the same as the issue presented here. Under the doctrine of issue preclusion, "[t]he issue in the prior action must be identical to the issue for which preclusion is sought." *Robi v. Five Platters, Inc.,* 838 F.2d 318, 326 (9th Cir. 1988). In *Wilhite I*, the issue before the Court was whether the individual Defendants were immune from suit on the basis of tribal sovereign immunity. (*Wilhite I*, Docket Nos. 39, 45.) Judge Watters found that because Wilhite sought to recover from the tribe for

acts of tribal officials done within the scope of their authority, sovereign immunity barred her claim.  (*Wilhite I*, Docket No. 39 at 6; Docket No. 45 at 4.)  She made clear, however, that the court "did not hold Wilhite could not sue the board of directors personally."  (*Wilhite I*, Docket No. 45 at 3.)  Rather, she only held "Wilhite cannot recover from the Care Center for the official acts of its board of directors."  (*Id.*)

Although similar in some respect, the questions of tribal sovereign immunity and protection under the Westfall Act are not the same.  Tribal sovereign immunity protects tribal members who are sued in their official capacity in circumstances where the plaintiff sues them in name, but seeks to recover from the tribe.  *Cook v. AVI Casino Enterp. Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) ("[T]ribal immunity protects tribal employees acting in their official capacity and within the scope of their authority.").

The issue is not the same when a Tribal employee is seeking to establish immunity under the FTCA.  The issue is not limited to the question of whether a Tribal employee was acting within the scope of their employment with the Tribe; "there is an additional step."  *Wilson*, 906 F.3d at 781.  The extension of FTCA

coverage for tort claims arising under the operation of 638 contracts is provided by 25 U.S.C. § 5321 (note),[2] which states, in relevant part:

> an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs . . . while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement . . . .

The requirements of this provision were examined by the Ninth Circuit in *Shirk v. U.S. ex. Rel. Dep't of Interior*, 773 F.3d 999 (9th Cir. 2014). The court found that the section requires a court "to determine whether, under state law, an employee's allegedly tortious action falls within the scope of his employment." *Id.* at 1004. In addition to that, however, the provision also provides that "employees must be 'carrying out the contract or agreement.'" *Id.* In other words, the question of scope of employment is further modified and narrowed by the requirement that the employee be carrying out the contract. The court, therefore, developed the following two-part test to determine whether a Tribal employee's actions are covered by the FTCA.

> At the first step of the § 314 inquiry, courts must determine whether the alleged activity is, in fact, encompassed by the relevant federal contract or agreement. The scope of the agreement defines the relevant "employment" for purposes of the scope of employment analysis at step two. Second, courts must decide whether the allegedly tortious action falls within the scope of

---

[2] This provision was formerly codified at 25 U.S.C. § 450f (note), and is commonly referred to as § 314. *Shirk v. U.S. ex. Rel. Dept. of Interior*, 773 F.3d 999, 1003 (9th Cir. 2014).

11

the tortfeasor's employment under state law. If both of these prongs are met, the employee's actions are covered by the FTCA.

*Id.* at 1006.

Nothing in Judge Watters' prior orders in *Wilhite I* address the test set forth in *Shirk*. Judge Watters did not address the scope of the 638 contract, and whether any of the Defendants were carrying out the contract at the time of the incident alleged in the complaint. As such, *Wilhite I* does not resolve the issue presented here, which is whether Defendants, as tribal employees, are entitled to immunity under the Westfall Act.

Thus, unless and until Defendants seek certification through the appropriate procedure, there is no basis to dismiss them from this action based upon the FTCA. As such, Defendants' Motion to Dismiss Re: Federal Tort Claims Act Exclusivity is **DENIED**.

### B. Wilhite's Motion to Strike

In Defendants' second motion to dismiss, they argue Wilhite's Complaint fails to state a claim upon which relief can be granted because her sole claim is precluded by res judicata. In response, Wilhite moves to strike the motion, arguing it is an improper successive motion under Rule 12(g).

Rule 12(g)(2) provides:

Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule

> raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g)(2).

The consequence of omitting a defense from an earlier-filed Rule 12 motion depends on the type of defense omitted. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317 (9th Cir. 2017). "A defendant who omits a defense under Rules 12(b)(2)-(5) – lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of service of process – entirely waives that defense." *Id.* (citing Fed. R. Civ. P. 12(h)(1)(A).) If, however, a defendant omits a defense under Rule 12(b)(6), the defense is not waived. *Id.* at 318. But "a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)." *Id.* Nevertheless, the defense may be asserted in other ways. Namely, Rule 12(h)(2) provides that the failure-to-state-a-claim defense may still be raised: (1) in a pleading under Rule 7, (2) in a post-answer motion under Rule 12(c), or (3) at trial. *Id.*; Fed. R. Civ. P. 12(h)(2).

Accordingly, Defendants' second pre-answer motion to dismiss under Rule 12(b)(6) technically violates Rule 12(g). The Ninth Circuit has indicated, however, that courts faced with successive Rule 12(b)(6) motions may exercise their discretion to consider the latter-filed motions in the

interests of judicial economy. *In re Apple*, 846 F.3d at 318-20. The Ninth Circuit explained that "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id.* at 318. As the Ninth Circuit noted, Rule 12(g) was designed to avoid repetitive motion practice, delay and ambush tactics. *Id.* But where, as here, Defendants are likely to simply re-file the exact arguments in a Rule 12(c) motion, "the parties would repeat the briefing they have already undertaken, and the Court would have to address the same questions in several months." *Id*. (quoting *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F.Supp.2d 116, 1175 (C.D. Cal. 2011)). Thus, striking Defendants' motion would delay the resolution of the res judicata issue and serve "no apparent purpose." *Id.* at 320.

It does not appear Defendants filed successive Rule 12(b)(6) motions for the purpose of delay or any other strategically abusive reason. Further, addressing both motions now will expedite disposition of the case on the merits. As such, the Court exercises its discretion to consider Defendants' second motion to dismiss. Wilhite's Motion to Strike is therefore, **DENIED**.

/ / /

C. **Motion to Dismiss Based on Res Judicata**

Defendants argue Wilhite's claim in this action is precluded by res judicata based on *Wilhite I*. Defendants' motion is not well-taken. First, as the Court has already discussed, Judge Watters' decision on tribal sovereign immunity does not necessarily address the issues presented in this action. Judge Watters did not consider Wilhite's individual capacity claims. In fact, Judge Watters explicitly provided in her December 20, 2018 order that "Wilhite is free to properly file a new claim against the board of directors personally and/or potential claims against the United States under the Federal Tort Claims Act." (*Wilhite I*, Docket No. 45 at 5.) Accordingly, Defendants Motion to Dismiss re: Res Judicata is **DENIED**.

III. **CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion to Dismiss Re: Federal Tort Claims Act Exclusivity (Doc. 4) is **DENIED**;

2. Defendants' Motion to Dismiss Re: Res Judicata (Doc. 12) is **DENIED**; and

3. Wilhite's Motion to Strike (Doc. 14) is **DENIED**.

DATED this 23rd day of March, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge